225 N.J. Super. 429 (1987)
542 A.2d 947
CHRISTI ANNE POLO, A MINOR BY HER MOTHER AND GUARDIAN AD LITEM, BARBARA (POLO) SHIPLEY AND BARBARA (POLO) SHIPLEY, INDIVIDUALLY, PLAINTIFFS,
v.
RICHARD P. GOTCHEL, M.D., JACQUELINE G. COANT, M.D. AND UNDERWOOD HOSPITAL, JOINTLY SEVERALLY AND/OR IN THE ALTERNATIVE.
Superior Court of New Jersey, Law Division Camden County.
July 10, 1987.
Benjamin Goldstein for Plaintiff (Maressa, Goldstein, Birsner, Patterson & Drinkwater, Attorneys).
*430 Burchard V. Martin for Defendant (Martin, Crawshaw & Mayfield, Attorneys).
BARRY M. WEINBERG, P.J. Cv.
Plaintiff, Christi Ann Polo born June, 1972, resides at Pleasant Manor School in Pennsylvania, a twenty-four hour care facility for children with special needs. Barbara Shipley, plaintiff's natural guardian, instituted this medical malpractice action against the delivering obstetrician, seeking compensation for said plaintiff's injuries.
Plaintiff's guardian, upon the recommendation of counsel, engaged the services of a medical-legal consulting service, JDMD, Inc., to assist in locating medical experts to review and provide opinions and to testify as to the medical aspects of the litigation.
An agreement for forensic support prepared by JDMD, Inc., was executed by the guardian, her attorney and JDMD, Inc. The agreement set forth a schedule of fees and charges payable to JDMD, Inc. The various costs included those to be incurred by an expert's participation in reviewing plaintiff's medical information, being deposed, and testifying, computed at an hourly rate.
The method of payment for services followed a two step process. The first step includes an initial service charge of $500.00 which becomes due and payable when the attorney requests the identity of the expert. If additional or substitute experts are provided, an additional $200.00 is charged. The second service charge provides for a 6% contingent fee on the gross recovery upon successful disposition of the case, be it settlement or verdict.
The provisions of the agreement require plaintiff's attorney to act as guarantor of the contingent fee payment to JDMD, Inc. This contingent fee, payable by the client, is in addition to the attorney's contingent fee.
*431 Medical information and records of the client were delivered to JDMD, Inc., by plaintiff's attorney. Thereafter, an expert selected by JDMD, Inc., reviewed and evaluated the medical information and rendered a report which included the expert doctor's opinion regarding the alleged malpractice. The report was then forwarded to plaintiff's counsel, along with recommendations by JDMD, Inc., regarding the merits of the claim.
The medical malpractice issues were compromised and a settlement was accomplished.
The issue before this court is the validity of the contingent fee agreement of JDMD, Inc., in light of the prevailing court rules, statutes, and public policy of the State of New Jersey.
This litigation presents a case of first impression in New Jersey. However, this factual pattern was addressed by the New Jersey Advisory Committee on Professional Ethics in Opinion 562, 116 NJLJ Index page 202.
Commenting on an inquiry based on a similar set of facts, the Advisory Committee answered the inquiry by first reviewing the Ethical guidelines of the medical profession. The Advisory Committee referred to the Current Opinions of the Judicial Council of the American Medical Association, 1984, Section 8.04 titled "Contingent Physicians Fees: Prohibition."
Section 8.04 specifically outlines the policy doctors should adhere to concerning contingent fee agreements. This section clearly enunciates the public policy that doctor's fees should not be based on an uncertain outcome of a contingency, the underlying public policy being the danger of the physician becoming more of an advocate and less of a healer. A doctor's fee should be calculated only on the value of the medical services provided, in accordance with acceptable standards of fee payment for services rendered.
Concurring with the American Medical Association Judicial Council's opinion, the New Jersey Advisory Committee on Professional Ethics reasoned that an attorney should not contravene these medical guidelines, by assisting or participating in a *432 contingent fee agreement with a doctor. In conclusion, the Advisory Committee asserted that even though a physician in providing a consultation to the medical-legal service may not be rendering medical services per se, the principle as expressed in the medical professions guidelines must be followed. Therefore, a physician's fee sould be based solely on the value of the services provided, not on the uncertain outcome of the litigation. 116 NJLJ Index page 202 at 203.
This Court can establish a basis to apply the recommendation of the New Jersey Advisory Committee on Professional Ethics opinion No. 562 by virtue of Article VI, Section 2, Par. 3 of the New Jersey Constitution (1947) which vests plenary power in the New Jersey Supreme Court to administer the rules of practice and procedure in our state courts. N.J. District Court Association v. Superior Court, 205 N.J. Super. 582 (Law 1985), aff'd 208 N.J. Super. 527 (App.Div. 1986), cert. den. ___ U.S. ___, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). Such Administration includes the formation of Supreme Court committees to assist in evaluating court rules. The Supreme Court views the New Jersey Advisory Committee on Professional Ethics as an arm of the Court. In Re Grinchis, 75 N.J. 495 (1978).
Directly on point with the foregoing discussion of the Advisory Committee's opinion No. 562 is N.J.S.A. 45:9-27.8 entitled "Contingent Fees; Prohibition." N.J.S.A. 45:9-27.8 prohibits, inter alia, "a physician from contracting, charging, or collecting a contingent fee where the medical services to the client form any part of the basis of a legal claim for damages." This clearly expresses a public policy which prohibits a doctor contracting for a contingent fee. The statute thus guarantees that a doctor will furnish his medical services and opinion objectively, without interposing a possible proprietary interest in the resulting legal action.
This public policy is reflected in the common law, wherein no right to payment or lien existed for a doctor's services from *433 proceedings brought by his patient. Albee v. King, 17 N.J. Misc. 180, 7 A.2d 291 (Sup. 1939).
By charging a six percent contingent fee on the gross recovery, JDMD, Inc., is improperly invading the plaintiff's right of recovery. But for the doctor's association and activities this medical-legal consulting service would not exist. Accordingly, JDMD, Inc., and the service it provides are merely instruments of subterfuge established to circumvent the restrictive policies of N.J.S.A. 45:9-27.8 and the American Medical Association's guidelines.
An attorney as an officer of the court, is within the control of the court regarding contingent fee agreements. The Supreme Court has promulgated the rules regarding contingent fee agreements. Attorneys are specifically permitted to charge contingent fees within the parameters of those rules, R. 1:21-7(a); RPC 1.5(c), (e); and RPC 5.4(a). As a condition precedent to any contingent fee agreement, R. 1:21-7(b) provides that an attorney is required to offer his services to the client at an hourly rate. This is the clear manifestation of the Supreme Court's exclusive control of contingent fees that is reflected in the court's refusal to permit anyone other than an attorney to charge a contingent fee. Specifically, any fee received by an attorney may not be shared with a non-licensed attorney. RPC 5.4.
At bar, the claim for damages involves injuries suffered by an infant. This court is under a duty to safeguard the minor child from further injury and to enforce legal obligations due to him or her. N.J.S.A. 2A:4A-21(e). Also, under the Court Rules of New Jersey, in particular R. 1:21-7(c)(5), the maximum contingent fee authorized in settlement involving infants is 25% of the net recovery, except as approved by petition to the court. An attempt by JDMD, Inc. to impose a contractual obligation for a six percent contingent fee on any gross recovery is in direct violation of R. 1:21-7(c)(5). This court's action to void the contingent fee agreement between JDMD, Inc. and the plaintiff *434 is mandated by both N.J.S.A. 2A:4A-21(e) and R. 1:21-7(c)(5) which are a clear reflection of the public policy of this State. New Jersey has long established the protection of infants from this type of imposition and unnecessary expense.
If photographers, accident reconstruction experts, investigators, and the like were permitted to charge on a contingent fee basis, only a miniscule portion of a recovery would be left for the injured plaintiff. Any contingent fee agreements, other than those governed by the courts concerning attorneys are obviously contrary to the public policy of the State of New Jersey and the expectation of its citizens.
This court has considered the opinion as expressed in Schackow v. Medical Legal Consulting, Etc., 46 Md. App. 179, 416 A.2d 1303 (1980), a Maryland case that addressed the situation of a medical legal consulting service who charged a contingent fee. In Schackow, the Court of Special Appeals of Maryland affirmed an award of a ten percent contingent fee for services rendered by the medical legal consulting firm. The issue involved whether the defendant had substantially performed under the contract. The Court reasoned that the defendant did substantially perform the contract, and that the contract did not violate the public policy of Maryland, 416 A.2d 1303 at 1313.
This court can distinguish Schackow based on the obvious difference in Court Rules as they exist in New Jersey and Maryland regarding contingent fee agreements. New Jersey Court Rules specifically enumerate that only attorneys are permitted to charge contingent fees and set forth various controls. The Court Rules of Maryland have no comparable provisions regarding control of contingent fees. Furthermore, that decision has no binding effect on this Court particularly since the Maryland rules are contrary to our established public policy.
This Court need not address the doctrines of champerty and maintenance, as they do not presently exist in New Jersey. A by J v. D, 196 N.J. Super. 340 (Law 1984).
*435 In conclusion, this Court finds the contingent fee agreement as entered into by Barbara Shipley, plaintiff's attorney and JDMD, Inc., violates the public policy of New Jersey as expressed in the Rules of Court, Rules of Professional Conduct and Statutes. Any deviation from these statutes is against public policy and is contrary to the spirit and intent of the rules. Therefore, the fee agreement of JDMD, Inc. is void.