Charles W. **ROGERS**, d/b/a **Rogers Formalwear**, Petitioner,

v.

**STATE BOARD OF TAX COMMISSIONERS**, Respondent.

No. 02T05–8910–TA–00044.

Tax Court of Indiana.

Jan. 24, 1991.

Stanley H. Matheny, Matheny, Michael, Hahn & Bailey, Huntington, for petitioner.

Linley E. Pearson, Atty. Gen. by Kim Ohmart Laurin, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Charles W. Rogers, d/b/a Rogers Formalwear, (Rogers) appeals the final determination of the Indiana State Board of Tax Commissioners (State Board) concerning his March 1, 1987, business personal property tax assessment. The State Board de-nied the adjustment claimed under Regulation 50 I.A.C. 4.1–2–4 for formalwear Rogers purchased in 1984, disallowed the classification of formalwear in depreciation POOL NO. 1 under Regulation 50 I.A.C. 4.1–2–6, and determined an assessed valuation of $25,900 plus $4,940 in penalties.

## ISSUES

Rogers' appeal raises five issues for the court's review:

I.   Did the State Board err when it denied the adjustment claimed under 50 I.A.C. 4.1–2–4?

II.  Did the State Board err by using Rogers' federal tax return cost basis and not his actual physical inventory records to determine his 1987 "cost per books?"

III. Did the State Board err when it placed Rogers' formalwear in depreciation POOL NO. 2?

IV.  Did the State Board err in computing the true tax value of Rogers' tuxedos?

V.   Did the State Board improperly impose a penalty when Rogers' undervaluation resulted from interpretive differences concerning adjustment under 50 I.A.C. 4.1–2–4 and pool placement under 50 I.A.C. 4.1–2–6?

## DISCUSSION AND DECISION

The court defers to the State Board when it acts within the scope of its authority. *See State Bd. of Tax Comm'rs v. Pioneer Hi-bred Int'l* (1985), Ind.App., 477 N.E.2d 939, 941 (citing *Public Service Comm'n v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308). The court will not disturb the State Board's final determination unless it is unsupported by substantial evidence, is an abuse of discretion, is contrary to law, or is arbitrary or capricious. *Hatcher v. State Bd. of Tax Comm'rs* (1990), Ind.Tax, 561 N.E.2d 852, 853 (citing *Bailey Seed Farms, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind.Tax, 542 N.E.2d 1389, 1391).

## I.

■ At the time of the assessment, Rogers' primary business was renting formalwear; however, he occasionally sold new and used formalwear and accessories (tuxedos). Rogers contends the tuxedos he purchased in 1984 qualify for a personal property tax adjustment under regulation 50 I.A.C. 4.1–2–4(B) as permanently retired property. 50 I.A.C. 4.1–2–4(C) defines permanently retired property as

> depreciable personal property that ... has been removed from services other than manufacturing on the assessment date, and is awaiting disposition, and must be scheduled to be scrapped, removed or dispose [sic] of and will be considered to be permanently retired providing the taxpayer actually scraps or sells such property.

To qualify for the adjustment, Rogers must prove that on the assessment date the property was: (1) removed from service, and (2) actually disposed of or scheduled for disposition. The tuxedos Rogers purchased in 1984 were not removed from service because, as Rogers admitted, they were still available for rental on the assessment date. Rogers did not provide receipts for sales, donations, or other disposals nor were any of these events reflected on his depreciation records to prove he scheduled the disposal or actually disposed of the tuxedos. Although Rogers provided annual and composite inventory records, the State Board found these records inconsistent and therefore insufficient to substantiate that Rogers had disposed of the tuxedos.

■ "Property that has been written off the taxpayer's books and records and is on hand at the tax situs and not permanently retired on the assessment date must be reported in the return." 50 I.A.C. 4.1–2–4(A). Therefore, personal property used to produce income is subject to tax regardless of whether its useful life or its economic life has ended. Property is taxable if it is *in use.* Consequently, property that has reached the end of its economic life but remains in service for the production of income cannot be simultaneously permanently retired property. Because the tuxedos Rogers' purchased in 1984 were available for rental on the assessment date, the court finds the State Board's determination denying the permanently retired adjustment is supported by substantial evidence, is according to law, and is not an abuse of discretion.

## II.

■ Rogers next asserts that the State Board incorrectly used his federal depreciation cost basis instead of his actual physical inventory records as his "cost per books." The "cost per books," "[t]he cost of depreciable property ... as recorded on the taxpayer's books and records, *must* be utilized in determining the value of the depreciable personal property subject to assessment." Regulation 50 I.A.C. 4.1–2–2 (emphasis added). The "cost per books" then is used to compute the property's adjusted cost. The adjusted cost is, however, subject to a mandatory adjustment:

> Mandatory Adjustment—The adjusted costs of the assessable depreciable personal property as computed in sub-section (B) below *must be reported at the tax basis of such property* as defined in Section 1012 of the Internal Revenue Code of 1954, as amended January 1, 1979.[1] Therefore, *if the tax basis of the taxpayer's assessable depreciable personal property is different than the cost per books of such property,* except for the depreciable personal property defined and required to be reported by Section 4 of Rule 2 [50 IAC 4.1–2–4] of this regulation, *an adjustment must be made to the cost per books* of the assessable depreciable personal property reported on the Indiana property tax return.

50 I.A.C. 4.1–2–5(A) (emphasis added) (footnote added). Therefore, the "cost per books," prior to an adjustment under 50 I.A.C. 4.1–2–4, must be the same as the property's cost basis reported on the taxpayer's federal income tax return.

---

1. I.R.C. § 1012 states that "[t]he basis of property shall be the cost of such property...."

On his original 1987 self-assessment return, Rogers placed tuxedos in depreciation POOL NO. 1 and thereby reported costs for the 1984, 1985, and 1986 pools.[2] The cost reported for each of these years was identical on both Rogers' 1987 federal return and his 1987 self-assessment. The State Board, however, placed Rogers' tuxedos in depreciation POOL NO. 2, requiring costs for the additional years of 1981, 1982, and 1983 to be reported.[3] The State Board took the costs for the missing years from Rogers' federal return rather than from his actual physical inventory records because the amounts on Rogers' inventory records were different than the amounts reported on his federal return. Rogers' bookkeeping caused confusion about which tuxedos were on hand March 1, 1987. He did not provide sales records or other receipts, and although he indicated at first that no inventory records existed; he later produced them. Rogers' annual inventories were inconsistent with his composite inventory. He explained the disparity, claiming that he did not always pay fully for tuxedos in the year of acquisition. The State Board, however, could not reconcile the numerical differences even by adding pool costs for four or five years and comparing that number to the total cost of acquisitions on Rogers' federal depreciation schedule. Because Rogers' inventory records differed from the cost basis reported on his federal return, the court finds the State Board's use of Rogers' federal cost basis as the "cost per books" is supported by substantial evidence, is according to law, and is not an abuse of discretion.

### III.

■ Rogers further asserts that the State Board erred when it placed his tuxedos in depreciation POOL NO. 2. Regulation 50 I.A.C. 4.1–2–6 states in pertinent part:

(A) General Rule—The adjusted cost of depreciable personal property … is required to be segregated for Indiana property tax purposes into 4 separate pools. The pools to be utilized for Indiana property tax purposes are as follows:

(1) POOL NO. 1—All assets which have a life of 1 through 4 years for federal income tax purposes,

(2) POOL NO. 2—All assets which have a life of 5 through 8 years for federal income tax purposes,

. . . .

(6) The useful life used to determine the proper classification of the pool in which an asset must be included is to be based upon the actual life utilized to compute depreciation on the federal income tax return of the taxpayer. . . .

Proper pool placement for state tax purposes must be based on the property's useful life that is *actually used* to compute depreciation on the taxpayer's federal income tax return. The State Board contends that Rogers used a five year useful life to calculate federal depreciation, and consequently, his tuxedos must be placed in depreciation POOL NO. 2. Conversely, Rogers asserts that he did not designate a useful life for tuxedos on his federal return, and that his federal return therefore did not mandate the placement of his tuxedos into a specific pool.

Depreciation calculated under I.R.C. § 168 (1986)[4] requires a property to have a designated useful life *unless* it is depreciated using "any method of depreciation not expressed in a term of years." I.R.C. § 168(f)(1)(B). Rogers calculated federal depreciation according to a longstanding

---

**2.** The particular pool placement of property governs the number of years required to be segregated by year of acquisition to determine each pool's depreciable cost. 50 I.A.C. 4.1–2–6(B). Property placed in POOL NO. 1 requires that the cost by year of acquisition be determined and entered for each of the three (3) years immediately preceding the assessment date. 50 I.A.C. 4.1–2–6(B)(1)(a).

**3.** Property placed in POOL NO. 2 requires that the cost by year of acquisition be determined and entered for each of the six (6) years immediately preceding the assessment date. 50 I.A.C. 4.1–2–6(B)(1)(b).

**4.** I.R.C. § 168, the Accelerated Cost Recovery System of depreciation, is a creature of the Tax Reform Act of 1986 that specifies the rate of depreciation, the recovery period, and the method of determining the date depreciation begins.

agreement with the Internal Revenue Service that expressed depreciation in a percentage of annual rental income rather than a term of years, meeting the requirements of I.R.C. § 168(f)(1)(B). Rogers' tuxedos therefore were not depreciated based on a useful life designation as normally required by I.R.C. § 168. Accordingly, Rogers asserts that the pool placement of his tuxedos was not governed by his federal return under 50 I.A.C. 4.1–2–6.

■ The court must construe 50 I.A.C. 4.1–2–6 to determine whether the placement of Rogers' tuxedos into a specific pool is mandated by Rogers' federal return even though his method of federal depreciation did not designate a useful life. In general, the same rules applicable to the rules of construction of a statute apply to the construction of administrative rules and regulations. *Don Meadows Motors, Inc. v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 518 N.E.2d 507, 508 (citing *Empire Gas of Rochester, Inc. v. State* (1985), Ind.App., 486 N.E.2d 1036, 1044). When construing a statute, it is just as important to recognize what a statute does not say as it is to recognize what it does say. *LeSea Broadcasting Corp. v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 525 N.E.2d 637, 639 (citing *Van Orman v. State* (1981), Ind.App., 416 N.E.2d 1301, 1305).

Regulation 50 I.A.C. 4.1–2–6 expressly links the determination of the proper pool classification to the useful life used to compute depreciation on the taxpayer's federal return. The regulation does not express, however, a standard to determine the proper pool when an actual useful life is not used to compute federal depreciation.

Consequently, the State Board's determination that Rogers' tuxedos must be placed in POOL NO. 2 because he used a five year useful life on his federal return is unsupported by substantial evidence, is contrary to law, and is arbitrary and capricious. The State Board therefore must determine the proper pool classification of the tuxedos in light of all the facts and circumstances.

## IV.

■ Rogers further contends that the State Board made several significant errors in computing the true tax value of his tuxedos. The State Board's assessment was based on Rogers' 1987 federal return which only included data up to December 31, 1986. According to 50 I.A.C. 4.1–2–2(A)(1)(b), "[t]he book cost as of the close of his last financial period will then be adjusted to reflect all acquisitions and disposals of depreciable property which have occurred between such date and the assessment date." The State Board inconsistently attributed one-twelfth of the 1986 supply costs but *all* of the 1986 freight costs to January and February, 1987. Additionally, the State Board arbitrarily chose 3.82 percent of Rogers' total annual income to represent the cost of inventory rather than forty percent of his annual inventory sales, the amount specified as the cost of inventory by Rogers' hybrid method of depreciation.

The State Board's assessment contains significant error and is unsupported by substantial evidence and is arbitrary and capricious.

## V.

■ Rogers finally contends that the State Board improperly imposed a penalty on his 1987 taxes in light of the existence of interpretive differences with the State Board concerning the claimed adjustment and the pool placement of tuxedos. I.C. 6–1.1–37–7(e) imposes a mandatory penalty whenever the amount reported on a taxpayer's self-assessment "is less than the total assessed value that the person is required by law to report and if the amount of the undervaluation exceeds five percent (5%) of the value that should have been reported on the return." An exception to the mandatory penalty exists only if the taxpayer "has complied with all of the requirements for claiming a deduction, an exemption, or an adjustment for abnormal obsolescence, then the increase in assessed value that results from a denial of the deduction, exemption, or adjustment for abnormal obso-

lescence is not considered to result from an undervaluation." I.C. 6–1.1–37–7(e).

Regulation 50 I.A.C. 4.1–1–9(E) states that the purpose of the penalty

> is to ensure a complete disclosure of all information required by the state board of tax commissioners on the prescribed self-assessment personal property return form. This enables the ... state board of tax commissioners to carry out their statutory duties of examining returns each year to determine if they substantially comply with the rules and regulations of the state board....

> It is not the purpose of this provision to impose a penalty on a person who has made a complete disclosure of information required on the assessment return form. Therefore, if the person filing the self-assessment personal property return shows that he is claiming a deduction or exemption or taking an authorized adjustment on the return form and has complied with all of the requirements for claiming that deduction, exemption, or adjustment no penalty should be added to the extent of the amounts accounted for on the return form.

> If a person has complied with all of the requirements for claiming a deduction, an exemption, or other adjustment (such as for abnormal obsolescence), then the increase in assessed value that results from a denial of the deduction, exemption, or other adjustment is not subject to the twenty percent (20%) penalty for undervaluation for purposes of this subsection.

Rogers claimed that tuxedos purchased in 1984 were permanently retired pursuant to 50 I.A.C. 4.1–2–4. The increase in assessed value resulting from the State Board's denial of the adjustment is not subject to penalty. Additionally, Rogers and the State Board disagreed about the depreciation pool in which tuxedos properly belonged. Rogers, claiming tuxedos belonged in POOL NO. 1, did not include on his 1987 self-assessment return information required when property is placed in POOL NO. 2. The imposition of a penalty when reasonable interpretive differences exist is inconsistent with the purpose of the penalty statute and regulation. The court finds that such interpretive differences exist.

## CONCLUSION

The court finds that the State Board's determination denying the permanently retired adjustment claimed under 50 I.A.C. 4.1–2–4(B) and using the cost basis from the federal return as the "cost per books" is supported by substantial evidence, according to law, and not an abuse of discretion. The court further finds that the State Board's determination placing Rogers' tuxedos in POOL NO. 2, calculating his 1987 assessment, and imposing a penalty is not supported by substantial evidence, is not according to law, is an abuse of discretion, and is arbitrary and capricious. The court remands this case for further action consistent with this opinion.

ORDERED.