**The CENTRIUM GROUP, Petitioner,**

**v.**

**The STATE BOARD OF TAX COMMIS-SIONERS, Bart Blosser, Allen County Assessor, Patricia L. Steigerwald, Allen County Treasurer, Linda K. Bloom, Allen County Auditor, and Daniel E. Patrick, Wayne Township, Allen County Assessor, Respondents.**

No. 02T10–9103–TA–00010.

Tax Court of Indiana.

Sept. 17, 1992.

Joseph W. Foye, Joseph W. Kimmell, Baker & Daniels, Fort Wayne, for petitioner.

Linley E. Pearson, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, G. William Fishering, Allen County Atty. Staff, Fort Wayne, for respondents.

FISHER, Judge.

The Petitioner, The Centrium Group (Centrium), appeals the final determination of the Respondent State Board of Tax Commissioners (the State Board) denying Centrium's request for a refund of penalties assessed under IND.CODE 6–1.1–37–10 for delinquent real property taxes.

### ISSUE

Whether the penalty was properly assessed against Centrium?

### FACTS

On June 6, 1983, Centrium, an Indiana general partnership, entered into a "Ground Lease and Agreement to Purchase Real Estate" (the Agreement) with Associated Dry Goods Corporation (Associated) and Ayres Realty Corporation (Ayres). Under the Agreement, Centrium purchased the old L.S. Ayres department store building at 200 East Berry Street in Fort Wayne and leased the underlying land for fifteen years. The Agreement required Centrium to pay all property taxes on the land, and to purchase the land at the end of the term.

The thirty-six page Agreement, which listed Centrium's then current mailing address on page twenty-seven, was filed with the Allen County Recorder (the Recorder) on June 7, 1983. The Allen County Auditor (the Auditor), however, was not notified of the transaction, no entry was made on the transfer books, and the Allen County Treasurer (the Treasurer) continued to mail tax notices as though the transaction had not

taken place. In the county tax records, the property had long been divided into two recorded lots, the lot on which the vacant department store building stood (Lot I), and an adjacent parking lot (Lot II). The Treasurer sent the notices for Lot II to Associated in Indianapolis, which forwarded them to Centrium. The notices for Lot I, however, were sent to the vacant department store and returned undelivered.

After the taxes due on Lot I in 1984, 1985, and May of 1986 went unpaid, the Auditor put the property up for tax sale in August 1986. Centrium read the published notice of the pending sale on August 4, 1986, and four days later paid the delinquent taxes of $159,584 and a penalty of $40,995.08.

On March 23, 1987, Centrium timely filed its Form 133 Petition for Correction of Error[1] and its Form 17T Petition for Refund,[2] claiming the Auditor's failure to determine Centrium's address rendered the penalty illegal. The State Board denied the petition on July 31, 1989, and Centrium brought this original tax appeal on March 11, 1991. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

When acting within the scope of its authority, the State Board is accorded great deference, *Rogers v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 398, 399, and the court will not disturb a final determination of the State Board unless the determination is arbitrary or capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. *Id.* Here, Centrium claims the State Board's determination was contrary to law because Centrium suffered a violation of its due process rights under the Fifth and Fourteenth Amendments to the United States Constitution as a result of the Auditor's wrongful failure to ascertain Centrium's address.

As Centrium correctly notes, county auditors are, and have been at all times relevant to this case, required to maintain transfer books containing "a description, for the purpose of taxation, of land that is conveyed by deed or partition, the date of the conveyance, the names of the parties, and the post office address of the grantee." IND.CODE 6–1.1–5–4(a). These records are used to generate the tax duplicate, or roll of property taxes for the county, which the county auditor forwards to the county treasurer. IND.CODE 6–1.1–22–3. Using the tax duplicate, the county treasurer then mails the property tax statements to the last known address of the persons responsible for the taxes. IND.CODE 6–1.1–22–8. If the taxes are not paid in a timely manner, penalties are added to the tax bill. IC 6–1.1–37–10. If the taxes remain delinquent for more than fifteen months, the county auditor must institute tax sale proceedings under IND.CODE 6–1.1–24–1 et seq. Prior to the sale, the county auditor must publish notice of the sale and send notice of the sale to the property owner at the owner's last known address. IND. CODE 6–1.1–24–3, 6–1.1–24–4.

Within this statutory framework for collecting taxes and selling property for delinquent taxes, the question of the scope of county auditors' duty to determine a taxpayer's last known address has engendered a substantial amount of recent litigation. *See, e.g., Smith v. Breeding* (1992), Ind. App., 586 N.E.2d 932; *Holland v. King* (1986), Ind.App., 500 N.E.2d 1229. In 1990, the court of appeals decided *Elizondo v. Read* (1990), Ind.App., 553 N.E.2d 849, *on reh'g,* 556 N.E.2d 959, holding that auditors are required to "check the public records to ascertain the correct address of any party whose property interests are to be adversely affected by tax sale proceedings." *Elizondo,* 553 N.E.2d at 851. The court of appeals decision in *Elizondo* formed the basis of Centrium's argument from the time it filed its original tax appeal through the trial of this cause.

Prior to oral argument, however, our supreme court granted transfer in *Elizondo*

---

**1.** 50 I.A.C. 4.1–1–14 (currently 50 I.A.C. 4.2–3–12).

**2.** 50 I.A.C. 4.1–1–16 (currently 50 I.A.C. 4.2–3–14).

and settled the question of auditors' duties, holding that

> the auditor[s] must ascertain from the records which [they] keep[ ] and maintain[ ] any alternate addresses for the owner of the specific piece of property at issue. Due process, however, does not require ... auditors to engage in speculation as would be the case when there is nothing to link [an] alternative address to the property at issue.

*Elizondo v. Read* (1992), Ind., 588 N.E.2d 501, 505. Therefore, to show entitlement to a refund of the penalty in the case at bar, Centrium is required to show that the Auditor could have found from any of her records a link between Centrium's address and Lot I. Centrium's arguments, however, do not center on the Auditor's records, but rather on the ease with which the Auditor could have used outside information to determine Centrium's address.

The evidence reveals the Centrium–Associated–Ayres transaction was surrounded by a great deal of local publicity. Moreover, the L.S. Ayres building in Fort Wayne is visible from the Auditor's office, and, at least during the time in question, a large sign with Centrium's leasing agent's address and telephone number stood in front of the vacant building. Given these facts, Centrium argues the Auditor could have determined Centrium's address with minimal effort. Indeed, because the Agreement was filed with the Recorder, Centrium posits the Auditor could have simply walked down the hall to get the address from the Recorder. *Oral Argument Transcript* at 10.

The Indiana Supreme Court rejected these arguments almost verbatim in *Elizondo*, and they are to no avail in altering the basic tenet that "the onus is upon the [taxpayer] to insure that the auditor's records reflect the correct address...." *Clark v. Jones* (1988), Ind.App., 519 N.E.2d 158, 160. "The U.S. Supreme Court's line of opinions addressing the issue of notice has never disregarded a party's ability to take steps to protect itself," *Elizondo*, 588 N.E.2d at 504, and due process does not require county auditors to look beyond their own records to find a taxpayer's correct address. Here, all that was required of Centrium was to stop at the Auditor's office on June 7, 1983, to get the Agreement stamped and entered in the transfer book pursuant to IC 6–1.1–5–4 before going to the Recorder's office to record the Agreement. Centrium's failure to take even this minimal step is not imputed to the Auditor.

## CONCLUSION

The Auditor was not required to look beyond her own records to find Centrium's address, and there was no due process violation in her failure to do so. Accordingly, the court finds the State Board's final determination upholding the penalty is within the law and supported by a sound base of substantial evidence.