Gary G. WIRTH, Petitioner,

v.

**STATE BOARD OF TAX
COMMISSIONERS,
Respondent.**

No. 49T10–9204–TA–00021.

Tax Court of Indiana.

May 4, 1993.

John R. Rumple, Sharpnack Bigley David & Rumple, Columbus, for petitioner.

Pamela Carter, Atty. Gen. of Indiana and Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Gary G. Wirth, appeals the final determination of the Respondent, the State Board of Tax Commissioners (the State Board), assessing a parcel of Wirth's Bartholomew county commercial property for the March 1, 1989, assessment.

## ISSUES

Wirth raises the following restated issues for review:

I.   Whether the State Board properly refused to rely on reassessment bulletin RO–33 in assessing Wirth's property.

II.   Whether the State Board abused its discretion by valuing the property at $160 per front foot.

III.   Whether the State Board abused its discretion in denying an influence factor to allow for the property's proximity to a water tower.

IV.   Whether the State Board abused its discretion in assessing the ratio of use between "general office" and "general retail."

V.   Whether the State Board abused its discretion in adding four masonry stoops to the assessment for the final determination.

## FACTS

Wirth owns a commercially zoned platted lot on State Road 46 East in Columbus, near a large water tower.  The building on the property has four masonry stoops leading up to several rear doors.  It is devoted to two uses, the office Wirth uses in his construction business and Wirth's wife's retail diet business.  In addition to the building, the property contains a paved parking area and a grassy area.  Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

■ The State Board is accorded great deference when acting within the scope of its authority. *Centrium Group v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 599 N.E.2d 242, 243 (citing *Rogers v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 398, 399). Accordingly, this court will reverse a final determination by the State Board only when it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious. *Hatcher v. State Bd. of Tax Comm'rs* (1992), 601 N.E.2d 19, 20 (quoting *Bailey Seed Farms, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind.Tax, 542 N.E.2d 1389, 1391).

■ Like any other party appealing an administrative decision, Wirth, the taxpayer, bears the burden to show the State Board's assessment was inaccurate. *See Meridian Hills Country Club v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 911, 913 (quoting *State Bd. of Tax Comm'rs v. Traylor* (1967), 141 Ind.App. 324, 228 N.E.2d 46, 52, *trans. denied* ). He has chosen to bear his burden using a contingently paid expert witness. *Transcript* at 69. The witness, who operates a property tax consulting business, *Transcript* at 5–7, prosecuted Wirth's appeal, *Transcript* at 7–8, and demonstrated familiarity with Wirth's case, as well as with Indiana's property taxation system.

■ The parties have not raised the expert's contingent fee as an issue, and the State Board did not base a challenge to the admissibility of the expert's testimony on the contingent fee. Nonetheless, the question of the propriety of the witness's testimony exists, and the court therefore addresses the question as part of its inherent power and obligation to control the proceedings before it. *See State ex rel. Gannon v. Lake Circuit Court* (1945), 223 Ind. 375, 383, 61 N.E.2d 168, 172; *Parker v. State* (1991), Ind.App., 567 N.E.2d 105, 110 (citing *Games v. State* (1989), Ind., 535 N.E.2d 530, *cert. denied* (1989), 493 U.S.

874, 110 S.Ct. 205, 107 L.Ed.2d 158), *trans. denied.*

■ Indiana courts have not previously addressed this question, but the court is mindful of the prevailing general rule that it is inappropriate to pay an expert witness a contingent fee. *See, e.g.,* Comment, Ind. Professional Conduct Rule 3.4(b); J. Gray, ed., *Annotated Model Rules of Professional Conduct* (2d ed., 1992) 356–57; *Matter of Arkansas Bar Ass'n* (1985), 287 Ark. 495, 562, 702 S.W.2d 326, 371; *Rules Regulating the Florida Bar* (1986), Fla., 494 So.2d 977, 1061; *Schackow v. Medical–Legal Consulting Service, Inc.* (1980), 46 Md. App. 179, 416 A.2d 1303 (contingent fee agreement with consulting firm did not violate public policy when experts who were to testify were not employees or officers of firm and were paid by the hour); *Blair v. Washington State Univ.* (1987), 108 Wash.2d 558, 740 P.2d 1379, 1387–88. Indeed, some states have gone so far as to hold expert witness contingent fee contracts, in at least some areas, void as against public policy. *See, e.g., Dupree v. Malpractice Research, Inc.* (1989), 179 Mich.App. 254, 445 N.W.2d 498 and statues cited therein; *Polo v. Gotchel* (1987), 225 N.J.Super 429, 542 A.2d 947.

The rationale underlying the general disfavor with which these contingent agreements are viewed goes to the heart of the judicial process. Courts exist to resolve disputes, and the main formal element of the proceedings they employ in their work is the trial. Trials are events that normally embrace the hearing of evidence to decide factual issues. *See, e.g., McAllister v. State ex rel. Bryant* (1972), 258 Ind. 238, 280 N.E.2d 311; *Gulf Oil Corp. v. McManus* (1977), 173 Ind.App. 147, 363 N.E.2d 223. The truth of a given matter is to be determined by the fact-finder, whether it be judge or jury, after a full and fair hearing of both sides in an adversarial setting. The adversaries present their witnesses who are bound by their oath to tell the truth. *See* IND.CODE 35–44–2–1. A contingent witness fee agreement, however, raises the specter of an auctioning of the truth and casts a pall over the entire

fact finding process. "The payment of a sum of money to a witness to 'tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true." *In re Robinson* (1912), 151 A.D. 589, 600, 136 N.Y.S. 548, 556.

Despite the disapproval expert witness contingent fee agreements have received, there is no absolute prohibition on the admission of a contingently paid expert's testimony, and in this court, which operates exclusively without a jury, IND.CODE 33-3-5-13(a), the potential for abuse is less than would be the case in a trial to a jury. Moreover, our supreme court has not ruled on any aspect of the matter, and the only Indiana guidance is, as cited above, the Comment to Rule of Professional Conduct 3.4(b).

■ The court therefore holds the testimony of contingently paid experts is not subject to exclusion in tax court cases solely on the basis of the expert's contingent fee. Such a witness's testimony will be admitted or excluded on the same basis as the testimony of any expert. In other words, the contingent nature of an expert witness's fee goes to the weight, not the admissibility, of the expert's testimony. The court will therefore review such testimony in light of the expert's fee arrangement.

### I

■ Wirth asserts the State Board's reassessment bulletin RO–33 (the Bulletin) is contrary to 50 I.A.C. 2.1–4–2(f) and is therefore an abuse of discretion. He claims he is entitled to have his land assessed under the terms of the regulation. The record reveals, however, that both the regulation and the Bulletin are inapplicable to Wirth's property and that the State Board did not use either of them to assess Wirth's property.

The property is a platted lot, *Petitioner's Exhibit 3*, and is located in Zone 6 of the Bartholomew County Land Valuation Order (the Land Order). *See* 50 I.A.C. 2.1–2–1(a). Under the Land Order, lots in Zone 6 are to be assessed by the front foot method, *Respondent's Exhibit 1* at 4, which is described in 50 I.A.C. 2.1–2–1(b). "A front foot is a strip of land one foot wide that fronts on a desirable feature (such as a street, or body of water) and extends for the entire depth of the parcel." 50 I.A.C. 2.1–2–1(b). The front foot method is based on a lot's location relative to the desirable front and the features surrounding the other bounds of the lot, *see, e.g.,* 50 I.A.C. 2.1–2–1(e) and (f), and the entire lot is valued as a unit based on its front footage, regardless of primary and secondary use.[1]

The concepts of primary and secondary use, on the other hand, apply to land valued by either square footage or acreage. Both the square footage and the acreage methods of valuation view a lot by its area, not by its shape and location relative to street frontage or other features. It is possible to divide lots assessed by their area into two or more parts, each part representing a different type of use. In the case at bar, the Land Order, as is typical, provides a range of base prices of four classes of land valued by acreage or square footage: primary, secondary, undeveloped and usable, and undeveloped and unusable. *Respondent's Exhibit 1* at 4. *See* Hendrickson, *How to Challenge an Indiana Realty Assessment,* 9 INTERSTATE TAX REPORT No. 4, at 2 (1992). This is the idea underlying the portion of 50 I.A.C. 2.1–4–2(f) governing primary and secondary use, and it is the reason that portion specifically applies only to acreage and square footage valuation.[2] The Bulletin, like 50 I.A.C. 2.1–4–

---

1. Accordingly, the Land Order does not have primary and secondary value ranges for the properties valued by the front foot method. *Respondent's Exhibit 1* at 4.

2. The portion in question reads as follows:
   *The following codes apply to the entry of acreage or square footage:*

Enter '1' to indicate 'PRIMARY IND/COMM SITE', which is the portion of the land utilized as the primary building site or plant site. Enter '2' to indicate 'SECONDARY IND/COMM SITE', which is the portion of the land utilized for uses which are secondary to the primary use and, therefore, require individual treatment. Use the following sub-codes,

2(f), addresses questions of primary and secondary use applicable to land valued by the acre or the square foot.

Wirth's property was properly valued under the Land Order on a front foot basis. There was no error in the State Board's refusal to apply primary and secondary designations to portions of the property.

## II

■ Wirth claims the State Board abused its discretion by valuing the property at $160 per front foot. The Land Order provides a range of values for lots in Zone 6 from $50 per front foot to $175 per front foot. *Respondent's Exhibit 1* at 4. The State Board has the final authority under IND.CODE 6–1.1–4–13.6 to set the values in county land valuation orders. Accordingly, because the value assigned to Wirth's property is within the allowable range, he cannot claim the State Board committed per se error by exceeding its statutory authority.

Wirth's only claim is the contingently paid expert's testimony that the property should be valued at $125 per front foot, instead of $160 per front foot, because of its location on the periphery of Zone 6. *Transcript* at 25. There is no dispute the property is not at either the bottom or the top of the value range; there is only a contention that the State Board's valuation within the range should be replaced with the expert's somewhat lower valuation within the range.

Abuse of discretion is made of sterner stuff than this. Valuation questions call for subjective judgment. As long as the State Board does not abuse its discretion in exercising its subjective judgment on a matter within the scope of its authority, this court will not reverse its decision. *Hatcher*, 601 N.E.2d at 20; *Centrium*

*Group*, 599 N.E.2d at 243. There was no error.

## III

■ Wirth next claims the State Board abused its discretion by denying him an influence factor to account for the property's proximity to a large water tower. An influence factor is one of six specific and one general possible "condition[s] peculiar to the land that dictates a positive or negative adjustment" to the assessment. 50 I.A.C. 2.1–4–2(f).[3] The decision whether to apply an influence factor calls for subjective judgment. *Id.*

Once again, Wirth's only evidence to show an influence factor is proper comes from the expert's opinion that the water tower detracts from the property's value. *Transcript* at 31. He presented no other evidence that shows the water tower was a detriment, and the expert's opinion is simply insufficient to overcome the wide latitude given the State Board and the presumption the State Board acted properly.

## IV

■ Wirth next claims the State Board erred in its determination of the ratio of the building's use between "general office" and "general retail." In Indiana, property is assessed not according to market value, but according to the State Board's regulations. IND.CODE 6–1.1–31–6(c); 6–1.1–31–7(d). Among other things, the regulations provide models to help identify and define various uses of property. *See* 50 I.A.C. 2.1–4–4; 2.1–4–7. The "general office" and "general retail" models are contained within 50 I.A.C. 2.1–4–7(a), the "General Commercial Mercantile Models." Space assessed as "general retail" use is valued lower than space assessed as "general office." *See* 50 I.A.C. 2.1–4–5, Schedule A.1. The main theoretical distinction between

which generally apply to industrial operations:
  '21' to indicate that the secondary use is parking
  '22' to indicate that the secondary use is yard storage, referring to that portion of the land predominantly utilized for material or product storage

  . . . .
    Enter '3' to indicate 'UNDEVELOPED,' which is the portion of land that is usable but is unused.
  50 I.A.C. 2.1–4–2(f) (emphasis added).

**3.** The same definition applies to residential property. 50 I.A.C. 2.1–2–1(g).

the two uses is the number and type of partitions dividing the space devoted to each use; retail space is more open and has fewer partitions than office space. *See* 50 I.A.C. 2.1–4–2(i); 2.1–4–7(a).

The State Board's final determination assessed 60 percent of the building's use as "general retail" and 40 percent as "general office." Wirth maintains the proper division is 80 percent "general retail" and 20 percent "general office." The State Board hearing officer testified he inspected the interior of the building. *Transcript* at 90. In making his inspection, he observed the different partitioning of the areas devoted to Wirth's office and his wife's diet business, *Transcript* at 90–91, analyzed the partitioning and spatial configuration of the entire building, *Transcript* at 90–91, reviewed and analyzed the actual uses, *Transcript* at 93, and measured the area with fewer partitions. *Transcript* at 90. After doing all this, the hearing officer reduced the portion of the building the county board of review had assessed as "general office" and determined the $^{60}/_{40}$ breakdown.

Wirth has presented nothing other than the expert's opinion to show the State Board erred. The hearing officer's procedures support the State Board's determination with a sound evidentiary base. There was no abuse of discretion, and this court will not disturb the State Board's determination.[4]

## V

Finally, Wirth claims the State Board abused its discretion by assessing four masonry stoops at the rear of his building, none of which had been previously assessed. He first argues the State Board is without authority to make any determination about the stoops because he did not raise them as an issue. Wirth is mistaken. The State Board has plenary authority to review and correct any errors when a tax-

payer brings an appeal before the State Board. IND.CODE 6–1.1–15–4(a).

■ Second, Wirth argues there is no provision in the regulations for the assessment of stoops attached to commercial properties. He is correct that the commercial pricing schedules of 50 I.A.C. 2.1–4–5 do not themselves provide for masonry stoops. The final sentence of 50 I.A.C. 2.1–4–5, Schedule E, however, states that "patios, porches, porticos, sun decks, balconies, and other residential type features" are to be priced from the residential pricing schedules contained in 50 I.A.C. 2.1–3–5. Within 50 I.A.C. 2.1–3–5, Schedule E.2 establishes the pricing schedule for masonry stoops. The State Board was within its authority to assess the stoops, and there was no abuse of discretion or action in excess of statutory authority.

■ The State Board, however, has misinterpreted its authority under IC 6–1.1–15–4(a). At trial, Wirth introduced evidence consisting of photographs and property record cards of properties near his to show those properties had not had their stoops assessed. The State Board objected, *Transcript* at 36, and the court now reiterates its reason for overruling the objection.

As stated above, the State Board may address and correct all errors in an assessment, even those errors not raised in the taxpayer's petition for review. If the State Board does in fact address issues not raised by the taxpayer, however, the taxpayer is constitutionally empowered to respond to the State Board's disposition of those issues for the first time on appeal to this court. *State Bd. of Tax Comm'rs v. Oliverius* (1973), 156 Ind.App. 46, 294 N.E.2d 646. The State Board simply has no power to take action affecting a taxpayer's property without giving the taxpayer notice and an opportunity to be heard, *id.*, and the first opportunity for a taxpayer to be heard on an issue raised by the State Board is often on appeal to this court. To

---

**4.** At trial, the expert also testified the State Board had not properly reduced the assessment to account for storage space. This issue was not presented to the State Board, however, and may

not be raised for the first time on appeal. *Scheid v. State Bd. of Tax Comm'rs* (1990), Ind. Tax, 560 N.E.2d 1283, 1284.

deny a taxpayer the opportunity to address an issue raised sua sponte by the State Board would be a denial of due process. *Id.*

Accordingly, when the appeal to this court presents a taxpayer with the first opportunity to be heard on an issue sua sponte raised by the State Board, the result is clear: the State Board may not come into this court, cite *State Board of Tax Commissioners v. Gatling Gun Club, Inc.* (1981), Ind.App., 420 N.E.2d 1324 and IND. CODE 33-3-5-14 for the proposition that the·court may not address issues not raised at the State Board's hearing, and entertain any hope of success. The court must adhere to due process requirements and will therefore continue to overrule objections like the one in the case at bar.

## CONCLUSION

Wirth has failed to show any abuse of discretion by the State Board. Accordingly, with the provisos about contingently paid expert witnesses and due process concerns noted, the final determination of the State Board is AFFIRMED.