Jon B. SIMMONS, Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T10–9312–TA–00093.

Tax Court of Indiana.

Nov. 14, 1994.

Jon B. Simmons, pro se.

Pamela Carter, Atty. Gen. of Indiana and Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Jon B. Simmons (Simmons), appeals the final determination of the Respondent, the State Board of Tax Commissioners (the State Board), valuing Simmons's commercial property for the 1989 assessment.

### ISSUE

Whether Simmons's property is entitled to an economic obsolescence adjustment to reflect the effects of its neighborhood.

### FACTS AND PROCEDURAL HISTORY

Simmons owns property in Center Township, Marion County, Indiana. The property

consists of a lot and a 24–unit apartment building, which was built in the 1920s. For the 1989 assessment, the Center Township Assessor (the Assessor) gave the property a total assessed value of $50,560 ($4,430 for land and $46,130 for improvements).

On December 27, 1989, Simmons filed a Form 130 petition for review of assessment with the Marion County Board of Review (County Board). The County Board issued its determination on September 14, 1990, in which it changed the rating of the building from average to fair. The assessed values, however, remained the same.

On October 5, 1990, Simmons filed a Form 131 petition for review of assessment with the State Board. The State Board held a hearing on March 4, 1992. On October 8, 1993, the State Board issued its final determination, in which it corrected improper measurements of the building and reduced the grade of the building from "C + 2" to "C." As a result, the total assessed value of the property was reduced to $45,660 ($4,430 for land and $41,230 for improvements).[1] Simmons, believing the assessment still too high, now appeals to this court. Additional facts will be supplied as necessary.

### STANDARD OF REVIEW

The State Board is accorded great deference when it acts within the scope of its authority. *Mahan v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 622 N.E.2d 1058, 1061. Thus, "the court will reverse the State Board's final determination only when it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary or capricious." *Id.* In this case, Simmons bears the burden to show that the State Board's failure to grant an economic obsolescence adjustment is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary or capricious.

1. On October 22, 1993, the State Board issued a second final determination in which it merely corrected a typographical error.

2. The State Board hearing officer rejected the use of these financial statements, however, testifying at trial that they did not provide her with

*See Wirth v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 613 N.E.2d 874, 876.

### DISCUSSION AND DECISION

"Income-producing real estate is typically purchased as an investment, and from an investor's point of view earning power is the critical element affecting property value. One basic investment premise is that the higher the earnings, the higher the value." *The Appraisal of Real Estate* 409 (Appraisal Institute, 10th ed. 1992). Simmons contends that the assessed value of his property should be reduced, thereby reducing his property taxes, because the amount he pays in property taxes is burdensome when compared to the amount he receives in income from the property. Specifically, he contends that an economic obsolescence adjustment is necessary because his building does not command a rental scale commensurate with its current property taxes.

At trial, Simmons testified that his building, located in the Woodruff Place neighborhood on Indianapolis's east side, is adjacent to Arsenal Technical High School. He explained:

A. "[W]here my apartment is located, it's right on the dividing line, because when you're in Woodruff Place yourself, I mean, I can't think of a nicer community I've ever lived in, but when you go south to Michigan Street, this property sits right on Michigan Street, this is a tough area and I grew up in it so I know what's going on. There's gangs and drugs and we have at least one shooting a year, and so I think that weighs into the valuation of this particular property...."

*Transcript* at 14. To further support his claim for economic obsolescence, Simmons submitted several of his building's 1989 quarterly financial statements at trial, which he had submitted at the State Board hearing. These statements indicated his building's gross income and itemized expenses for several quarters.[2]

enough information to determine whether economic obsolescence existed or not. *Transcript* at 25–26. More specifically, she asserted in response to the court's inquiries:

A. "I don't know if that income represented he was at full capacity and everyone paid, was

In its assessment of Simmons's property, the State Board did examine both the Woodruff Place area and the Michigan Street area. Nevertheless, the State Board determined that the two areas could have no effect on the value of Simmons's building. More specifically, the State Board hearing officer revealed at trial in response to the court's questions:

A. "For a commercial building, the neighborhood does not affect depreciation. The depreciation is based on the age of the building and the condition."

Q. "So, the neighborhood would only have entered into it if it were a dwelling you were doing, that's what you're saying?"

A. "Right."

*Transcript* at 40. The State Board, however, is mistaken for two reasons.

First, under the State Board's regulations, Indiana property is assessed according to its true tax value, not its market value. *See Wirth v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 613 N.E.2d 874, 878 (citing IND.CODE 6–1.1–31–6(c); 6–1.1–31–7(d))). True tax value is determined by the State Board's regulations. IND.CODE 6–1.1–31–5(a). A commercial improvement's true tax value includes two types of depreciation: physical depreciation and obsolescence depreciation. 50 I.A.C. 2.1–5–1. Physical depreciation is determined by the combination of age and condition. *Id.* Obsolescence depreciation is determined by functional and economic loss of value. *Id.* Causes of economic obsolescence include:

Location of structure unappropriate [sic.] for its neighborhood

A neighborhood that is in transition of use

.     .     .     .     .     .

Market acceptability of the product or devices for which the property was constructed or is currently used

.     .     .     .     .

50 I.A.C. 2.1–5–1. Because physical depreciation and obsolescence depreciation are two separate and distinct types of depreciation, the State Board's assessment of Simmons's building may reflect two depreciation adjustments: one to reflect its age and condition (physical depreciation), and the other to reflect its functional and economic loss of value (obsolescence depreciation). *Id.* Because a commercial improvement's neighborhood can cause economic loss (i.e. economic obsolescence), it is simply contrary to its own regulations for the State Board to assert that a neighborhood may not affect a commercial building's depreciation.

Second, the State Board's regulations provide for rating a property in relation to its neighborhood in several ways. First, the property, whether residential or commercial, is designated according to "the life cycle stage that is most characteristic of the neighborhood in which [it] is located." 50 I.A.C. 2.1–3–3(e). *See also* 50 I.A.C. 2.1–4–2(e). A neighborhood's life cycle stage may be designated as improving, static, declining, or blighted. 50 I.A.C. 2.1–3–3(e). 50 I.A.C. 2.1–4–2(e). The neighborhood's life cycle stage may then be used as an influence factor to adjust, either positively or negatively, the value of the land. *See* 50 I.A.C. 2.1–2–1(g).

The neighborhood desirability rating system, however, comes into play when valuing improvements. "Neighborhood desirability is a composite judgment of the overall desirability based on the condition of agreeable living and the extent of residential benefits arising from the location of the dwelling."

---

there any another [sic.] income generated by the property, did he have contributors, did he have anyone—is there any other way that he generates income other than rent. I just had a figure of—I didn't have the specific income statement as I did the expenses. His expenses were itemized, his income was not."

Q. "Did you ask him during the course of the hearing about the income figures?"

A. "No, I didn't...."

*Transcript* at 36–37. Thus, the State Board's determination to reject Simmons's financial statements because "the income figure was not itemized" was based upon a speculation that the figures might represent something more than gross rental income. While a determination based upon mere speculation cannot stand, the State Board's rejection is of little consequence since Simmons has not shown how his financial statements relate to the issue of obsolescence. *See Sutton v. State* (1991), Ind.App., 571 N.E.2d 1299, 1304 (discussing jury verdict based on speculation). Perhaps he will do so on remand.

50 I.A.C. 2.1–5–1. A neighborhood's desirability may be rated as excellent, very good, good, average, fair, poor, and very poor. *Id.* Nevertheless, neighborhood desirability ratings are given to residential improvements only (and not to commercial improvements) because residential improvements do not receive obsolescence adjustments, like commercial improvements do. Thus, a residential improvement's neighborhood rating and a commercial improvement's economic obsolescence adjustment are analogous methods by which the State Board may adjust an improvement's value to reflect the effects of its neighborhood.

In the case at bar, the hearing officer listed Simmons's neighborhood as static (i.e., "a condition of equilibrium evidenced by little change"). *See* 50 I.A.C. 2.1–4–2. This designation, she contended, is merely informational and has no effect on the assessed value of the property. *Transcript* at 39. Perhaps what the hearing officer meant by this statement is that the designation of Simmons's neighborhood as static, which indicates it has experienced little or no change, in turn does not change the value of his land. In other words, because his neighborhood remained at "a condition of equilibrium," so too should the value of his land. In turn, influence factors, whether positive or negative, were not warranted.

■ Nevertheless, as the court stated earlier, a designation of static does not apply to the assessed value of an improvement, but rather to the assessed value of land. Accordingly, the State Board should not confuse the designation of a neighborhood's life cycle stage and its potential to affect land values with a neighborhood desirability rating or an obsolescence adjustment and their potential to affect improvement values.

### *CONCLUSION*

The State Board's refusal to consider the neighborhood when assessing Simmons's property assessment constituted an error of law. The court therefore REMANDS the case to the State Board to consider: 1)

whether Simmons's property is entitled to an economic obsolescence adjustment because of its neighborhood; and 2) whether Simmons's financial statements, as they relate to the causes of functional and economic obsolescence in 50 I.A.C. 2.1–5–1, demonstrate such an adjustment is warranted.