INLANDER STEINDLER PAPER COMPANY, INC. *v.* JOSEPH GEES-
LIN, CARLTON PHILLIPI AND DURWOOD STRANG, INDIVIDUALLY
AND AS MEMBERS OF THE STATE BOARD OF TAX COMMISSIONERS
OF INDIANA; BARTEL ZANDSTRA, AUDITOR OF LAKE COUNTY,
INDIANA; AND THEODORE L. SENDAK, ATTORNEY GENERAL FOR
THE STATE OF INDIANA.

[No. 3-1272A88. Filed April 17, 1973. Rehearing denied June 12, 1973.
Transfer denied August 15, 1973.]

*Kenneth D. Reed, Crumpacker, Abrahamson & Reed,* of
Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *Curtis J. Butcher,
J. Gordon Gibbs, Jr., Merle B. Rose,* Deputies Attorney Gen-
eral, for appellees.

HOFFMAN, C.J.—This appeal is from a final determination of the State Board of Tax Commissioners reassessing the business personal property of taxpayer-Inlander Steindler Paper Company, Inc., (taxpayer). The case was originally filed in the Lake Superior Court, Room 5, but was removed to the Appellate Court of Indiana pursuant to IC 1971, 6-1-31-5 (Burns Code Edition). This cause was transferred to the Starke Circuit Court prior to the existence of the Court of Appeals.

This cause was submitted to the trial court upon an agreed statement of fact. Paragraph 12 of such statement is the crux of the instant controversy and provides as follows:

"12. On March 1, 1968, the assessment date in question, the taxpayer had in inventory certain goods which were manufactured for out-of-state purchasers. As of March 1, 1968, said goods had not been shipped, had not been placed in the original package for the purpose of transshipment to an out-of-state destination and were not so designated (for out-of-state transshipment) on an original bill of lading. Therefore said goods were not packaged or set apart or so designated on an original bill of lading in a manner factually consistent with the language of Burns' 64-643(b) as the same applies to the facts of this case."

The taxpayer here contends that the tax imposed by the State Board of Tax Commissioners on the goods described in Paragraph 12 is violative of the Commerce Clause, Art. 1, § 8, Cl. 3 of the Constitution of the United States.

The test by which to determine if a State tax imposes a burden on interstate commerce is stated in *Empresa Siderurgica* v. *Merced Co.* (1949), 337 U.S. 154, at 156-157, 69 S. Ct. 995 at 996-997, 93 L. Ed. 1276, as follows:

" '* * * goods do not cease to be part of the general mass of property in the state, subject, as such, to its jurisdiction, and to taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation, to another state, or have been started upon such transportation in a continuous route or journey.' Coe v. Town of Errol, 116 U.S. 517, 527, 6 S. Ct. 475, 478, 29 L. Ed. 715. That test was fashioned to determine the validity under the Commerce Clause of a nondiscriminatory

state tax. But as we noted in Richfield Oil Corp. v. State Board of Equalization, 329 U.S. 69, 79, 67 S. Ct. 156, 91 L. Ed. 80, it is equally applicable to cases arising either under Art. I, § 10, Cl. 2 (The Import-Export Clause) or under Art. I, § 9, Cl. 5, which prohibits Congress from laying any tax on 'Articles exported from any State.'

"Under that test it is not enough that there is an intent to export, or a plan which contemplates exportation, or an integrated series of events which will end with it. See Turpin v. Burgess, 117 U.S. 504, 6 S. Ct. 835, 29 L. Ed. 988; Cornell v. Coyne, 192 U.S. 418, 24 S. Ct. 383, 48 L. Ed. 504. The tax immunity runs to the process of exportation and the transactions and documents embraced in it. Fairbank v. United States, 181 U.S. 283, 21 S. Ct. 648, 45 L. Ed. 862; United States v. Hvoslef, 237 U.S. 1, 35 S. Ct 459, 59 L. Ed. 813, Ann. Cas. 1916A, 1286; Thames & Mersey Marine Ins. Co. v. United States, 237 U.S. 19, 35 S. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087. Delivery of packages to an exporting carrier for shipment abroad, A.G. Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S. Ct. 485, 67 L. Ed. 865, and the delivery of oil into the hold of the ship furnished by the foreign purchaser to carry the oil abroad, Richfield Oil Corp. v. State Board of Equalization, supra, have been held sufficient. It is the entrance of the articles into the export stream that marks the start of the process of exportation. Then there is certainty that the goods are headed for their foreign destination and will not be diverted to domestic use. Nothing less will suffice." (Footnote omitted.)

In *Coe* v. *Errol* (1886), 116 U.S. 517, at 528, 6 S. Ct. 475, at 479, 29 L. Ed. 715, it is stated:

"It is true, it was said in the case of *The Daniel Ball,* 10 Wall. 565: 'Whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced.' But this movement does not begin until the articles have been shipped or started for transportation from the one state to the other. The carrying of them in carts or other vehicles, or even floating them, to the depot where the journey is to commence, is no part of that journey. That is all preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation. Until actually launched on its way to another state, or committed to a common carrier for transportation to such state, its destination is not fixed and certain. It may be sold or otherwise disposed of within the state, and never

put in course of transportation out of the state. Carrying it from the farm or the forest to the depot is only an interior movement of the property, entirely within the state, for the purpose, it is true, but only for the purpose, of putting it into a course of exportation. It is no part of the exportation itself. Until shipped or started on its final journey out of the state its exportation is a matter altogether *in fieri*, and not at all a fixed and certain thing."

The intent to export is insufficient even if the articles are eventually exported. *Joy Oil Co.* v. *State Tax Comm'n.* (1949), 337 U.S. 286, 69 S. Ct. 1075, 93 L. Ed. 1366. The character of the shipment depends upon the circumstances; what the owner has done in preparation for the journey and in carrying it out. *Hughes Bros. Co.* v. *Minnesota* (1926), 272 U.S. 469, 47 S. Ct. 170, 71 L. Ed. 359. Movement for another State must have actually begun and be going on. *Hughes Bros. Co.* v. *Minnesota, supra.*

"The true construction of the constitutional provision is that no burden by way of tax or duty can be cast upon the exportation of articles, and does not mean that articles exported are relieved from the prior ordinary burdens of taxation which rest upon all property similarly situated. The exemption attaches to the export, and not to the article before its exportation." *Cornell* v. *Coyne* (1904), 192 U.S. 418, at 427, 24 S. Ct. 383, at 384, 48 L. Ed. 504.

In the instant case, the goods described in Paragraph 12 were manufactured but were not in the process of exportation. They were in no way launched on their way to another State nor committed to a common carrier. They were not put into the stream of commerce. Under the authorities heretofore cited the goods described in Paragraph 12 were not a part of interstate commerce on March 1, 1968, and were taxable by the State of Indiana.

The taxpayer contends that IC 1971, 6-1-29-7, (Burns Code Edition), which confers on the State Board of Tax Commissioners the right to review the assessment or reassessment of any property, and to reassess any such property is unconstitutional. However, the taxpayer has not specified which

clause of the Constitution he believes is violated by IC 1971, 6-1-29-7, *supra.* Nevertheless, we will comment briefly on the following statement which is the crux of appellant's contention:

"The Persons Charged With The Primary Responsibility Of Such Assessments And Their Enforcement Are Each And All Locally Elected People. The Tax Revenues Derived Are Used to Finance Local Budgets. The State Board of Tax Commissioners and Their Division of Tax Review Are Not *Elected But Rather Are Appointed Officials.*" (Emphasis supplied by taxpayer.)

The law is well settled that the duties of elected officials, even those offices created under the Constitution, need not remain static. Unless limited by the language of the Constitution, the Legislature may expand or restrict the duties of an elected official. *Dortch* v. *Lugar* (1971), 225 Ind. 545, 266 N.E.2d 25.

Appellant cites no authority for the proposition that the review of the action of an elected official by an administrative agency is unlawful, nor can we find such to be the law with regard to the State Board of Tax Commissioners. In 84 C.J.S., *Taxation,* § 523, at 1008, it is stated:

"Under statutes conferring on boards for the review and correction of assessments authority to adjust, correct, or change the valuation returned by the assessing authorities, the power to equalize or change valuations, either by adding or substracting, has been recognized and declared in general terms by the courts, and it is the duty of the boards, under such provisions, to place their own valuations on property, and they are not limited to valuations stated by the assessors or taxpayers." IC 1971, 6-1-29-7, *supra,* is not unconstitutional.

The judgment of the trial court is affirmed.

Affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 294 N.E.2d 809.