**Donald E. MILLS and Barbara C. Mills, Petitioners,**

v.

**STATE BOARD OF TAX COMMISSIONERS; Vanderburgh County Board of Review and James Angermeier, Vanderburgh County Assessor, Respondents.**

No. 82T10–9212–TA–00102.

Tax Court of Indiana.

Sept. 7, 1994.

---

Leslie C. Shively, Noffsinger, Price, Bradley & Shively, Evansville, for petitioners.

Pamela Carter, Atty. Gen. of Indiana and Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent State Bd. of Tax Com'rs.

Dennis Brinkmeyer, Evansville, for respondents Vanderburgh County Bd. of Review and Vanderburgh County Assessor.

FISHER, Judge.

Donald E. Mills and Barbara C. Mills (the Millses) appeal the final determination of the State Board of Tax Commissioners (the State Board), assessing their residential real property for 1990. They also appeal changes made to their 1989 assessment by the Vanderburgh County Board of Review (the County Board) after March 26, 1991.

## ISSUES

I.   Whether the County Board's March 26, 1991, response was the County Board's final determination of the Millses' 1989 assessment.

II.  Whether the State Board's final determination is unsupported by substantial evidence, constitutes an abuse of dis-

cretion, exceeds statutory authority, or is arbitrary and capricious.

### FACTS AND PROCEDURAL HISTORY

The Millses own residential real property consisting of a lot and a dwelling in Vanderburgh County, Evansville, Indiana. For the 1989 general reassessment, the Township Assessor assessed the Millses' real property at $80,170 ($8,470 for land and $71,700 for improvements).

The Township Assessor assigned a grade and design factor of "A–1" to the Millses' dwelling and calculated the Millses' assessment using the corresponding multiplier of 150%. *See* 50 I.A.C. 2.1–3–4(f). The Millses did not agree that the "A–1" grade and design factor was appropriate for their dwelling and filed a timely Form 130 Petition for Reassessment with the County Board. Their petition asserted that the proper grade and design factor was a "B" and that the assessment should have been calculated using the corresponding multiplier of 120%. *See id.*

On January 18, 1991, the County Board held a hearing on the Millses' Form 130, and on March 26, 1991, the County Board returned the Form 130 to the Millses. In section 4 of the Form 130, titled "County Board of Review Response to Petitioner's Claims," the County Board had inserted the words "Changes as Marked" and "Grade and Design 120%." *Petitioners' Exhibit C.* Because 120% is the multiplier used to calculate the assessed value of real property assigned a grade and design factor of "B," the Millses believed that the County Board had changed the grade and design factor of their property from an "A–1" to a "B," just as they requested.

On July 18, 1991, however, the Millses received a second response from the County Board informing them that the County Board had declined to make changes in their 1989 assessment. In addition, the response notified the Millses that the County Assessor had appealed the County Board's decision by filing a Form 131 Petition with the State Board for Review of Assessment. The Form 131 indicated that the Assessor had moved to lower the grade and design factor of the Millses' property pursuant to IND.CODE 6–

1.1–13–2, but the other members of the County Board had rejected his motion.

On March 13, 1992, the State Board notified the Millses that it would hold a hearing on the Form 131 petition "for a redetermination of the assessment as of March 1, 1989." *Petitioners' Exhibit F* at 18. The hearing was held on March 24, 1992, but for some unexplained reason, evidence of the County Board's March 26, 1991, response was not presented to the State Board.

On April 13, 1992, while the State Board's final determination was pending, an employee of the County Assessor's Office changed the design and grade multiplier shown on the County Board's March 26, 1991 response to the Millses from 120% to 150%, thereby changing the grade and design factor from a "B" back to an "A–1." The Millses were not notified of this change.

On October 23, 1992, the State Board issued its final determination. The State Board determined that the Form 131 was not timely filed and, therefore, it declined to review the Millses' assessment on the basis of the Form 131. Nevertheless, the State Board invoked its authority to review and reassess the Millses' property *sua sponte.* The State Board determined that although the applicable limitations period prevented it from reviewing the Millses' 1989 assessment, the limitations period did not prevent it from reviewing the Millses' assessment for 1990 and subsequent years. Consequently, the State Board reviewed the Millses' assessment for 1990 and subsequent years and entered a final determination that the correct grade and design factor was an "A–1."

On December 7, 1992, the Millses appealed to this court both the State Board's final determination and the changes made to their 1989 assessment by the County Board after March 26, 1991. Additional facts will be provided as necessary.

### DISCUSSION AND ANALYSIS
### STANDARD OF REVIEW

"The State Board is accorded great deference when acting within the scope of its authority." *Wirth v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 613 N.E.2d 874,

876 (citing *Centrium Group v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 599 N.E.2d 242, 243). "Accordingly, this court will reverse a final determination by the State Board only when it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious." *Id.* (citing *Hatcher v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 601 N.E.2d 19, 20). The Millses bear the burden to show that the State Board's assessment is inaccurate. *See id.* (citing *Meridian Hills Country Club v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 911, 913).

The validity of the State Board's final determination turns on the resolution of questions surrounding the County Board's March 26, 1991, response to the Millses' Form 130. The court, therefore, will address the issue of the County Board's response first.

## I

The Millses assert that the County Board's March 26, 1991, response to their Form 130 constituted a final determination by the County Board of their 1989 assessment. Further, they assert that changes made by the County Board to the grade and design factor after that date were without legal authority. The County Board argues, however, that the March 26, 1991, correspondence with the Millses was not a final determination; rather, it was merely a worksheet. The County Board also argues that the April 13, 1992 change made to the Millses' property grade and design factor was simply the correction of a typographical error.

Once a Form 130 is filed with the County Board, the County Board is required to notify the taxpayer of the date fixed for the hearing, hold a hearing, and then by mail, give notice of its determination to the taxpayer. IND.CODE 6-1.1-15-2.1. The County

Board notified the Millses that it would hold a hearing on their Form 130. The hearing was held on January 18, 1991. On March 26, 1991, the County Board returned to the Millses a copy of their Form 130. In the section of the Form 130 titled "County Board of Review Response to Petitioner's Claims," the words "Changes as Marked" and "Grade and Design 120%" appeared. *Petitioners' Exhibit C.* The Form 130 was signed by the president of the County Board and attested to by the secretary of the County Board. *Petitioners' Exhibit C.* In addition, the Form 130 notified the Millses that if they did not agree with the County Board's assessment determination, they could appeal to the State Board by filing a Form 131 petition.[1]

Administrative agency actions are "final orders" if they determine the rights of, or impose obligations on, the parties as a consummation of the administrative process. *Downing v. Board of Zoning Appeals* (1971), 149 Ind.App. 687, 691, 274 N.E.2d 542, 544–45. In this case, the administrative process at the county level was complete on March 26, 1991, as pursuant to I.C. 6-1.1-15-2.1, a hearing had been held and the Millses had been notified of the County Board's determination. Accordingly, the County Board's March 26, 1991, response was the County Board's final determination of the Millses' 1989 assessment. Thus, the Millses had a right to a "B" grade and design factor and the County Board had an obligation to calculate the assessed value of the Millses' property using the corresponding 120% multiplier.

Once the County Board issues a final determination on an assessment, it can make changes in that assessment only if it gives proper notice to the taxpayer under IND. CODE 6-1.1-13-1,[2] or if it files a timely appeal with the State Board under IND. CODE 6-1.1-15-3.[3] In this case, the County

---

1. The Millses did not appeal because they believed the County Board had lowered the grade and design factor, just as they requested in their Form 130.

2. IC 6-1.1-13-1 provides:
   "Before a county board of review changes any valuation or adds any tangible property and the value of it to a return or the assessment rolls under this chapter, the board shall give prior notice by mail to the taxpayer. The notice must state a time when and a place where the taxpayer may appear before the board. The time stated in the notice must be at least ten (10) days after the date the notice is mailed."

3. IC 6-1.1-15-3 provides:

Board did neither. Nevertheless, the County Board argues that the April 13, 1992, change in the Millses' grade and design factor was merely a correction of a typographical error. Indeed, the County Assessor testified at trial that although the March 26, 1991, response to the Millses may have shown a grade and design multiplier of 120%, the assessed value of improvements, shown on the form as $64,970, was calculated using a grade and design factor of 150%. *Trial Transcript* at 49; *Plaintiffs' Exhibit C.*

The County Assessor's testimony, however, is inconsistent with the April 13, 1992, changes. On that date not only was the grade and design multiplier changed to 150%, but the assessed value of improvements also was changed from $64,970 to $66,370. *Respondents' Exhibit 1.* The April 13, 1992, change was an attempt to alter a grade and design factor reduction previously awarded to the Millses. In any event, the summary correction of a mathematical error in computing an assessment may be made only if the correction is first approved by at least three of the following officials: 1) the township assessor, 2) the county auditor, 3) the county treasurer, and 4) the county assessor. IND.CODE 6–1.1–15–12. *See also Hatcher v. State Bd. of Tax Comm'rs* (1990), Ind.Tax, 561 N.E.2d 852, 856. In this case, there is no indication that any three of these officials first approved the County Board's "correction." Thus, even if the April 13, 1992, change had been made merely to correct an error, the court has no evidence to show that the proper procedure was followed. The County Board's March 26, 1991, response to the Millses remains the County

Board's final determination of the Millses' 1989 assessment.[4]

## II

Next, the Millses assert that the State Board's final determination is an abuse of discretion because the Form 131 was not properly filed with the State Board. The court will give specific statutory procedures established by the legislature their plain, ordinary, and usual meaning. *Reams v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 620 N.E.2d 758, 761 (citing *Monarch Steel Co. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 611 N.E.2d 708, 713). I.C. 6–1.1–15–3, which provides the statutory procedure for appealing a county board of review determination, requires that a party file a Form 131 with the county auditor within 30 days after a county board of review notifies the taxpayer of its action. I.C. 6–1.1–15–3(c); *see also* 50 I.A.C. 4.2–3–3.

As the court has already held, the County Board notified the Millses of its final determination on March 26, 1991. On July 18, 1991, the Assessor filed a Form 131 with the State Board. Thus, the Form 131 was filed after the 30 days allowed by I.C. 6–1.1–15–3. Nevertheless, the State Board granted a hearing on the Form 131. Then, in its final determination, the State Board dismissed the Form 131 because it was untimely.[5] That was not the end of the matter, however. The State Board invoked its authority under IND.CODE 6–1.1–14–10 to review the Millses' assessment *sua sponte.* I.C. 6–1.1–14–10 provides that "[t]he state board of tax commissioners may at any time review the assessment or reassessment of any tangible property and may reassess the proper-

(b) A township assessor or a member of the county board of review may obtain a review by the state board of tax commissioners of any assessment which he has made, upon which he has passed, or which has been made over his protest.

(c) In order to obtain a review by the state board of tax commissioners under this section, the party must file a petition for review with the appropriate county auditor within thirty (30) days after notice of the county board of review's action is given to the taxpayer....

4. The County Board asserts that there was no evidence presented at trial to show that the prop-

er grade and design factor of the Millses' property was indeed a "B." The question of grade and design factor, however, is not before the court. The question before the court is whether the County Board properly changed its final determination of March 26, 1991. It did not.

5. Although the State Board was unaware of the County Board's March 26, 1991, response and dismissed the Form 131 on the ground that the County Board did not take action on the Millses' Form 130, the outcome is no different. The County Assessor filed the Form 131 after the filing period had expired.

ty...." *See also Inlander Steindler Paper Co. v. Geeslin* (1973), 156 Ind.App. 83, 87, 294 N.E.2d 809, 812 (it is not unconstitutional for the State Board to have the general power of reassessment). Thus, the State Board contends it did not improperly issue a final determination on an untimely Form 131, but instead acted pursuant to its authority under I.C. 6–1.1–14–10.

The court notes, however, that the State Board's power to review an assessment *sua sponte* is not unlimited, for I.C. 6–1.1–14–10 provides that "any change in an assessment is subject to the requirements and limitations prescribed in [IND.CODE 6–1.1–14–11]." First, I.C. 6–1.1–14–11 establishes a limitations period:

> [A]n assessment or reassessment may not be made under this section unless notice of the board's final determination is given to the taxpayer within the same time period prescribed, in section 3 or section 4 of I.C.1971, 6–1.1–9, for giving an assessment adjustment notice.[6]

(Footnote added). Second, I.C. 6–1.1–14–11 establishes a notice requirement:

> The state board of tax commissioners shall give notice by mail to a taxpayer whose assessment is to be reviewed under [I.C. 6–1.1–14–10] of this chapter. The notice shall state the time, place, and object of a hearing on the assessment.

The State Board was correct in its determination that the limitations period prevented it from reviewing the Millses' 1989 assessment *sua sponte*, for more than 3 years had passed between the assessment date of March 1, 1989, and the State Board's final determination on October 23, 1992. The State Board erred, however, in its determination that it had the authority to review and change the assessments for 1990 and subsequent years *sua sponte*. Although the State Board was not provided with the County Board's March 26, 1991, response that reduced the Millses' grade and design factor to a "B," the State Board, nevertheless, changed the Millses' assessment when it determined that the Millses' dwelling be graded

"A–1." Further, because there was a change, the State Board was required to notify the Millses of the "time, place, and *object* of the hearing ...". I.C. 6–1.1–14–11 (emphasis added). In this case, the Millses received notice that on March 24, 1992, "the state board of tax commissioners [would] hear the matter of the petition for a redetermination of the assessment of [their property] as of March 1, 1989." *Petitioners' Exhibit F* at 18. The notice did not advise the Millses that the State Board would take up the matter of their assessment for 1990 and subsequent years.

■ Under a predecessor statute, the Indiana Supreme Court held that:

> The required notice to taxpayers by the State Board of Tax Commissioners of time, place, and object of a hearing upon assessments for review and reassessment was provided for the benefit and protection of the individual taxpayer. And the failure to give such notice cannot be regarded as a mere irregularity of no consequence to the taxpayer affected thereby.

*Board of Comm'rs v. Western Electric Co.* (1926), 198 Ind. 417, 422, 153 N.E. 177, 178. Moreover, the plain language of I.C. 6–1.1–14–10 and I.C. 6–1.1–14–11 establishes that when the State Board reviews a taxpayer's assessment *sua sponte*, it cannot change the assessment unless it first provides the taxpayer with notice of the time, place, and object of a hearing on the reassessment. The State Board's final determination exceeded statutory authority because it changed the Millses' assessment for 1990 and subsequent years without giving them notice that the object of the hearing would be their assessment for 1990 and subsequent years. Strict compliance with the notice requirement of I.C. 6–1.1–14–11 is particularly important in a case like this where an untimely Form 131 and hearing appears to be the only impetus for the State Board's decision to reexamine an assessment *sua sponte*.

---

**6.** IND.CODE 6–1.1–9–4 provides:
Real property may be assessed, or its assessed value increased, for a prior year under this

chapter only if the notice required by section 1 of this chapter is given within three (3) years after the assessment date for that prior year.

### *CONCLUSION*

For the foregoing reasons, the court hereby holds the County Board's March 26, 1991, response to be the County Board's final determination of the 1989 assessment and REVERSES the State Board's final determination for the 1990 and subsequent year assessments. Accordingly, this case is REMANDED to the State Board and County Board for action consistent with this opinion.