**Gerry J. SCHEUB, Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

**No. 49T10–9509–SC–00107.**

Tax Court of Indiana.

Sept. 22, 1999.

Crystal Bauer, Richard F. James, James, James & Manning, P.C., Dyer, IN, Attorneys for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Marilyn S. Meighen, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Petitioner, Gerry J. Scheub (Scheub), appeals the final determination of the State Board of Tax Commissioners (State Board) assigning a 35% physical depreciation to Scheub's home following a 1992 interim reassessment of his property. In this original tax appeal, Scheub disputes the State Board's decision to lower his assigned level of physical depreciation from 45% to 35% and challenges the validity of the township assessor's interim reassessment.

## ISSUES

I. Whether the Court has subject matter jurisdiction to decide the

validity of the interim reassessment.

II. Whether the interim reassessment of Scheub's property is void because the Lake County Board of Review never ordered the St. John Township Assessor to perform the reassessment, in violation of IND. CODE ANN. § 6–1.1–13–8 (West 1989) (amended 1997);

III. Whether the interim reassessment is void because the township assessor failed to send Scheub notice that his property was to be reassessed pursuant to IND.CODE ANN. § 6–1.1–9–1 (West 1989) (amended 1993 & 1997); and

IV. Whether the State Board lacked authority to reassess Scheub's property under either IND.CODE ANN. § 6–1.1–14–10 (West 1989) or IND.CODE ANN. § 6–1.1–15–4 (West 1989) (amended 1993, 1995 & 1997).[1]

## FACTS AND PROCEDURAL HISTORY

Scheub owns residential real estate in St. John Township, Lake County, Indiana. The property was reassessed in 1989 as part of the general, state-wide reassessment and was reassessed in 1991. *See* IND.CODE ANN. § 6–1.1–4–4 (West 1989) (amended 1997). On August 4, 1991, St. John Township Assessor Terry A. Barczak (Barczak) requested that the Lake County Board of Review (BOR) issue an order for the reassessment of township property. On August 12, 1991, the BOR voted to authorize Barczak to "re-evaluate" all land and improvements within the township.[2] Barczak subsequently conducted an interim reassessment of township property. The effective date of the interim reassessment was March 1, 1992.

Barczak fixed the assessed value of Scheub's property at $14,430 ($1,830 for land and $12,600 for improvements). Scheub filed a Form 130 Petition for Review of Assessment with the BOR on December 1, 1992. On November 18, 1993, the BOR issued its assessment determination, making no changes in the assessed value of Scheub's property. Scheub filed a Form 131 Petition for Review of Assessment with the State Board on December 15, 1993. In the petition, Scheub alleged, among other things, that Barczak never received an order from the BOR to reassess township property under section 6–

---

1. Scheub presents an additional issue not reached by the Court: whether substantial evidence supports the State Board's reduction of his home's assigned physical depreciation level from 45% to 35%.

2. The BOR referred to Barczak's reassessment as a "re-evaluation." However, the term "re-evaluation" is not used in Indiana statutory or administrative code provisions addressing the assessment of real property, although the Indiana Administrative Code defines "reassessment" as "the revaluation of all properties within a given jurisdiction for the purpose of establishing a new tax base." IND. ADMIN. CODE tit. 50, r. 2.1–6–1 (1992) (Appendix) (presently codified at IND. ADMIN. CODE tit. 50, r. 2.2–1–51 (1996)). The August 12 vote was taken in response to discussions of the BOR regarding a need to equalize assessment inconsistencies within the township. In a press release dated August 15, 1991, the BOR indicated that its vote authorized Barczak to evaluate township property "under the auspices" of section 6–1.1–13–8. Moreover, following the reassessment, township property owners received Form 11 notices reflecting increased assessment values for their properties. *See* IND. ADMIN. CODE tit. 50, r. 2.2–1–12 (1996) (defining "Assessment notice" or "Form 11" as "a written notification to a property owner of the assessed value of certain properties described in the notice" and stating that the notice must by law be given to each property owner following à revaluation of the property). Regardless of the label applied by the BOR, it effectively ordered Barczak to conduct a complete reassessment. *See* IND CODE ANN. § 6–1.1–13–8 (West 1989) (amended 1997). The Court will hereafter refer to Barczak's 1992 reassessment as an "interim reassessment." *See* IND.CODE ANN. § 6–1.1–4–30 (West 1989) ("In making any assessment or reassessment of real property in the interim between general reassessments, the rules, regulations, and standards for assessment are the same as those used in the preceding general reassessment.").

1.1–13–8, that Barczak failed to provide notice of the interim reassessment under section 6–1.1–9–1, and that the State Board improperly declined to increase the assigned value of physical depreciation on his home from 45% to 60%. On June 30, 1994, the State Board issued notice to Scheub that a hearing on his petition was scheduled for July 14, 1994. On August 11, 1995, the State Board issued a final assessment determination. In its decision, the State Board declined to address the validity of the interim reassessment.[3] The State Board did conclude that the home's average condition rating combined with an average neighborhood rating generated a physical depreciation of 35%. *See* IND. ADMIN. CODE tit. 50, r. 2.2–7–12 (1996).

Scheub commenced this original tax appeal on September 22, 1995. The Court conducted a trial on July 26, 1996. Following the parties' submissions of proposed findings of fact, conclusions of law and supporting briefs, the Court heard oral argument in this matter on March 21, 1997. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

 This Court gives the final determinations of the State Board great deference when the State Board acts within the scope of its authority. *See Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *See id.* Scheub bears the burden of demonstrating that the State Board's final determination is invalid. *See Clark v. State Bd. of Tax*

**3.** Although the State Board failed to address whether the interim assessment was void under sections 6–1.1–9–1 or 6–1.1–13–8, the Court is free to decide these issues because

*Comm'rs,* 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998).

## Discussion

### I

 As a preliminary issue, the State Board incorrectly contends that this Court lacks subject matter jurisdiction to declare the interim assessment void. The Indiana Tax Court has exclusive jurisdiction over any case, such as the present one, which arises under state tax laws and which is an initial appeal from the State Board. *See* IND.CODE ANN. § 33–3–5–2 (West 1996). In deciding property tax matters, the Court has the authority to determine whether local officials or boards properly followed statutory procedures. *See, e.g., Dalton Foundries v. State Bd. of Tax Comm'rs,* 653 N.E.2d 548, 552 (Ind. Tax Ct.1995) (concluding that statutes require county auditors to forward every Form RRS–1 to the proper township assessor, regardless of whether the form was filed in a timely or untimely manner).

In asserting its challenge to the Court's subject matter jurisdiction, the State Board may be attempting to argue that Scheub represents only himself in the present case and not a class of township real property owners. To the extent that this is the State Board's position, the Court notes that Scheub is not pursuing a class action; he did not bring this original tax appeal as a representative of township taxpayers pursuant to Ind. Trial Rule 23. *See McCart v. Chief Executive Officer in Charge, Indep. Fed. Credit Union,* 652 N.E.2d 80, 82–83 (Ind.Ct.App.1995) (describing two-step procedure for determining propriety of class action certification), *trans. denied; Independence Hill Conservancy Dist. v. Sterley,* 666 N.E.2d 978, 981 (Ind.Ct.App.1996) (observing that, without a properly defined class, a class action cannot be maintained). Therefore, any re-

they may be determined as a matter of law. *See Barth, Inc. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 800, 805 (Ind. Tax Ct.1998), *reh'g denied.*

lief afforded Scheub in this matter cannot serve as a remedy for other taxpayers in St. John Township.

## II

Scheub challenges the validity of the interim reassessment. He contends that the BOR violated the provisions of section 6–1.1–13–8, which in relevant part states, "If the [county] board finds that the aggregate assessment of a township is too high or too low or that it is generally so unequal as to render it impracticable to equalize the aggregate assessment, the board may set aside the assessment of the township and order a new assessment." Because the BOR made no such finding, Scheub argues, the interim reassessment is void.

■ Scheub incorrectly asserts that the interim reassessment itself is void for lack of the required finding. Section 6–1.1–13–8 does not grant the BOR authority to conduct a reassessment. *Cf. Matonovich v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1093, 1098 (Ind. Tax Ct.1999) (holding that State Board does not have authority under IND.CODE ANN. § 6–1.1–4–9 (West 1989) to conduct reassessment of county property and therefore does not have authority to hire contractors to do so on its behalf). Rather, under the statute, the BOR may only set aside a township assessment and order a new assessment. *See* IND.CODE ANN. § 6–1.1–13–8 (West 1989) (amended 1997); *see also State Bd. of Tax Comm'rs v. Stanley,* 123 Ind.App. 64, 105 N.E.2d 830, 832 (1952) (under a previous version of the statute, "the only power vested in [county board] ... was to set aside the assessment of the whole county and order a new assessment with instructions to the assessors ...."), *opinion on denial of reh'g,* 123 Ind.App. 64, 106 N.E.2d 812, *opinion on denial of trans.,* 231 Ind. 338, 108 N.E.2d 624.

■ A finding as to the township's aggregate assessment was a condition precedent to any action by the BOR setting aside the prior assessment and ordering a new assessment. According to the BOR's minutes from the August 12 meeting, Board Member Tony Zaleski moved "to authorize the St. John Township Assessor to re-evaluate all land and improvements within the township pursuant to the written request of [Barczak]. This motion was seconded by [Board Member] Tom Devine, and the [BOR] voted in favor of said motion 4–0." (Pet'r Ex. 5). Thus, no finding was ever made and the prior assessment was never set aside. Because the requisite finding was not made, the BOR could not order the township's interim reassessment under section 6–1.1–13–8. Thus, the BOR's August 12 vote ordering (or "authorizing") the interim reassessment was invalid. However, a determination that the BOR's order was invalid does not dictate a finding that the interim reassessment was likewise invalid, because Barczak had authority to independently reassess Scheub's property under section 6–1.1–9–1.

## III

■ Scheub also maintains that the interim assessment was invalid because Barczak failed to give him proper notice of the proposed increase in assessment pursuant to section 6–1.1–9–1. Section 6–1.1–9–1 provides that the township assessor, if she "believes that any taxable tangible property has been omitted from, or undervalued on, the assessment rolls or the tax duplicate ... [,] *shall* give written notice ... to the taxpayer of the intention of the official ... to increase" the property's assessment. *Id.* (emphasis added). In addition, the statute affords the taxpayer an opportunity to appear before the township assessor to show "good cause why the proposed action should not be taken...." *Id.* Under this section, Barczak had authority to increase Scheub's individual assessment regardless of whether the BOR properly or improperly ordered her to reassess the entire township, as long as she provided the mandatory notice.

■ The notice required by section 6–1.1–9–1 is mandatory, because it is for

the benefit and protection of the taxpayer. *See, e.g., Wetzel Enters.*, 694 N.E.2d at 1263 (observing that notice requirement by State Board under section 6–1.1–14–11 is mandatory because it is included to protect taxpayer); *Mills v. State Board of Tax Comm'rs*, 639 N.E.2d 698, 703 (Ind. Tax Ct.1994) (noting importance of proper notice by State Board when conducting sua sponte review of taxpayer's assessment) (quoting *Board of Comm'rs v. Western Elec. Co.*, 198 Ind. 417, 422, 153 N.E. 177, 178 (1926)); *see also F.W. Woolworth Co. v. State Bd. of Tax Comm'rs*, 175 Ind.App. 10, 369 N.E.2d 958, 961 (1977) ("We agree ... that a defective notice [for business personal property tax assessment] from the [State] Board or any other assessing official, whether intentional or unintentional, that obstructs or prohibits an effective appeal constitutes a denial of due process."); *Cummings v. Stark*, 138 Ind. 94, 34 N.E. 444, 447 (1893) (improper for county auditor, upon order by State Board, to add to taxpayer's property tax assessment; "auditor had no power to make such addition without giving appellees notice in writing of his intention so to do, and hence his act in making such addition was without authority of law, and void"). Evidence in the record indicates that township taxpayers were made aware of their increased assessments upon receiving Form 11 notices. Form 11 notice is issued only after a taxpayer's property has been reassessed. *See* IND. ADMIN. CODE tit. 50, r. 2.2–1–12 ("[Form 11 notice] is mandated by law to be given to each property owner *following* a revaluation of the property.") (emphasis added). Form 11 notice operates as notice after the fact and thus fails to give a taxpayer an opportunity to respond to a proposed increase in his property tax assessment before the assessing board or official prior to the increase being made on the assessment rolls. Because the notice requirement of section 6–1.1–9–1 was neither followed nor substantially complied with in the present case, the Court concludes that the township assessor's interim assessment was void as a violation of section 6–1.1–9–1. *Cf. Sherry Designs, Inc. v. State Bd. of Tax Comm'rs*, 589 N.E.2d 285, 286 (Ind. Tax Ct.1992) (finding that, because taxpayer did not comply, either fully or substantially, with statutory notice provisions and because notice requirements are jurisdictional, taxpayer failed to invoke Court's jurisdiction to hear its appeal).

## IV

■ In reviewing a taxpayer-initiated petition, the State Board may exercise its power to "assess the property in question, correcting any errors which may have been made." IND.CODE ANN. § 6–1.1–15–4 (West 1989) (amended 1997). However, as the Court has previously explained, "the State Board may only correct an error in the assessment [under section 6–1.1–15–4] if there was a valid assessment in the first place." *Joyce Sportswear Co. v. State Bd. of Tax Comm'rs*, 684 N.E.2d 1189, 1191 (Ind. Tax Ct.1997) (citing *Lakeview Country Club v. State Bd. of Tax Comm'rs*, 565 N.E.2d 392, 395 (Ind. Tax Ct.1991)), *appeal dismissed*. Because the 1992 interim reassessment was invalid, the State Board was not permitted under section 6–1.1–15–4 to correct any alleged assessment errors on the part of Barczak.

■ The State Board is not limited to reviewing assessments within the context of administrative appeals by a taxpayer, township assessor or county board member. *See* IND.CODE ANN. § 6–1.1–15–3 (West 1989) (amended 1993 & 1997). The State Board may also perform a sua sponte review of an assessment under IND. CODE ANN. § 6–1.1–14–10 (West 1989). This section provides that the State Board "may at any time review the assessment or reassessment of any tangible property and may reassess the property. However, any change in an assessment is subject to the requirements and limitations prescribed in [IND.CODE ANN. § 6–1.1–14–11 (West 1989)]." Section 6–1.1–14–11 requires the State Board to give notice by mail to a taxpayer whose assessment will be subjected to a sua sponte review. "The notice

shall state the time, place, and object of a hearing on the assessment." *Id.*

 Where *proper notice has not been provided a taxpayer, the State Board may not conduct a sua sponte review. See Wetzel Enters.,* 694 N.E.2d at 1262. As noted above, the notice provisions of section 6–1.1–14–11 are mandatory because they are included to protect the taxpayer. *See id.* at 1263. Strict compliance with the notice requirement of section 6–1.1–14–11 is particularly important where the State Board's impetus for reexamining an assessment sua sponte is a Form 131 petition that cannot be properly considered as a basis for reassessment by the State Board pursuant to section 6–1.1–15–4. *See Mills,* 639 N.E.2d at 703 (strictly construing "object" aspect of notice requirement where State Board exercised sua sponte authority only after it determined county assessor had untimely filed Form 131 petition).

 In the present case, the State Board provided no notice that it would review Scheub's property pursuant to section 6–1.1–14–10. Scheub filed his Form 131 petition according to the administrative appeal provisions of section 6–1.1–15–3. The general instructions of the Form 131 petition completed and filed by Scheub indicate that the State Board "will review an assessment under this petition *pursuant to I.C. 6–1.1–15–4* ...." (Transcript of Proceedings before State Bd. of Tax Comm'rs, Ex. A) (emphasis added). The State Board issued notice of Scheub's administrative hearing on its Form 117. The

Indiana Administrative Code, in a section entitled "Schematic of appeal and review procedures," describes a Form 117 as follows: "State Tax Board notice of hearing on petition as a result of Board of Review Action *IC 6–1.1–15–3.*" IND. ADMIN CODE tit. 50, r. 4.2–3–4 (1996) (emphasis added). This schematic further indicates that Form 116 is used when the "State Tax Board, on its own motion examines and verifies accuracy of property tax return *IC 6–1.1–14–10 & 6–1.1–14–11.*" *Id.* (emphasis added). Moreover, the State Board's final assessment determination of Scheub's appeal is labeled in the upper left-hand corner "FORM 118 (Revised 1991) Prescribed by the State Board of Tax Commissioners (1961) *Pursuant to IC 6–1.1–15–4.*" (Transcript of Proceedings before State Bd. of Tax Comm'rs, Ex. C) (emphasis added).[4] The documents filed with, relied upon and issued by the State Board make no reference to an intent by the State Board to conduct a sua sponte review of Scheub's property.

In addition, the Court notes that the present case presents a situation analogous to that in *Mills,* where the State Board conducted a sua sponte review and reassessment only after becoming aware of the erroneous assessment during the administrative appeals process and deciding that it could not conduct a valid assessment as part of the appeals process due to an untimely filed Form 131 petition. Similarly, the State Board only became aware of Scheub's erroneous assessment while considering his Form 131 petition as part

4. Interestingly, the schematic as contained in the Indiana Administrative Code indicates that Form 118 is used as notice of its assessment or change in assessment from the State Board's review under both Indiana Code sections 6–1.1–14–10 and 6–1.1–15–4. *See* IND. ADMIN. CODE tit. 50, r. 4.2–3–4 (1996). However, it lists the notice as coming under section 6–1.1–14–11. The plain language of the statutes requires notice of final assessment determinations under both sections 6–1.1–14–11 and 6–1.1–15–4(d)(1). In the present case, the State Board chose to issue its notice of final assessment determination pursuant to the latter.

Of course, a notice of final assessment is issued only after the State Board's assessment is completed and is not a substitute for notice of the State Board's intention to conduct a review in the first place. In the present case, the reference to section 6–1.1–15–4 on the final assessment notice issued to Scheub is not dispositive as to whether the State Board initially issued proper notice of an intent to conduct a sua sponte review of Scheub's property. However, it is an appropriate factor to consider in deciding whether the totality of evidence demonstrates that proper notice was issued.

of its typical administrative review process. As noted above, the initial assessment of Scheub's property was void, so the State Board had no authority to reassess the property as part of its administrative review. Thus, as in *Mills*, 639 N.E.2d at 703, where the Court found that strict compliance with the notice requirement of section 6–1.1–14–11 was "particularly important," the State Board in this matter could not have properly conducted a sua sponte review of Scheub's property under section 6–1.1–14–10 without first having strictly complied with the notice provisions of section 6–1.1–14–11.[5]

■■■■■ Notice under section 6–1.1–14–11 should reasonably inform the taxpayer of the State Board's intent to exercise its authority to conduct a sua sponte review of the taxpayer's assessment. In the present case, a reasonable person could not infer from the State Board's actual notice or its actions—which took place within its typical administrative appeals process—that the State Board intended to conduct a sua sponte review of Scheub's property. Considered in its totality, the evidence points to an objective manifestation of the State Board to use only its review powers under section 6–1.1–15–4. Therefore, the Court finds that the State Board did not provide proper notice under section 6–1.1–14–11 of an intent to conduct a sua sponte review of Scheub's property.[6]

Because the interim reassessment was void, the State Board could not conduct a valid assessment of Scheub's property as part of its administrative review of his Form 131 petition. Furthermore, the State Board failed to issue proper notice on an intent to conduct a sua sponte review of Scheub's property. Therefore, the Court holds that the State Board exceeded its statutory authority to review and reassess Scheub's property.

## CONCLUSION

For the foregoing reasons, the State Board's final assessment determination is REVERSED and this cause is REMANDED to the State Board with instructions to reinstate the assessment of Scheub's residential real property as determined in the 1991 reassessment of the property.

---

5. In *Mills*, 639 N.E.2d at 702, the State Board specifically invoked its authority to conduct a sua sponte review under section 6–1.1–14–10. The State Board's notice, however, lacked sufficient information informing the taxpayers of the exact "object" of the State Board's review. It was this lack of specificity which required the reversal of the State Board's reassessments for the tax years mentioned. In the present case, no evidence whatsoever indicates that the State Board specifically invoked its sua sponte review powers, a fact that further bolster's the Court's conclusion that proper notice under section 6–1.1–14–11 was not provided by the State Board.

6. It is important at this point to mention the Court's prior decision in *Dawkins v. State*

*Board of Tax Commissioners*, 659 N.E.2d 706 (Ind. Tax Ct.1995), wherein a valid assessment was conducted by the township assessor but an improperly constituted county board, lacking a quorum, denied the taxpayers' request to reduce the assessment of a replacement industrial improvement. Unlike *Dawkins*, where the initial assessment was apparently valid and the county board's decision did not invalidate the assessment, the 1992 interim assessment in the present case was invalid. With an invalid interim reassessment, only section 6–1.1–14–10 gave the State Board authority to review Scheub's property. Thus, strict application of the notice requirement found in section 6–1.1–14–11 is warranted.